**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emma Lewis,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-21-00268-TUC-RCC (JR)<br><br>**ORDER** |

Plaintiff Emma Lewis ("Plaintiff" or "Lewis") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). The matter is ripe for decision. (Doc. 17, 20, 21.) Based on the pleadings and the administrative record ("AR"), as more fully set forth below, the decision of the Commissioner will be reversed and the matter remanded for further proceedings.

## BACKGROUND

**Procedural History**

On September 17, 2018, Lewis protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act") alleging a disability onset date of January 1, 2018. (AR 15, 274.) Lewis's claim was denied initially and on reconsideration. (AR 141-157, 158-169.) Hearings were held before an Administrative Law Judge ("ALJ") on March 12, 2020 and January 6, 2021. (AR 80-101 (March 12, 2020 hearing), AR 102-111 (January 6, 2021 hearing).) In a decision dated

February 2, 2021, the ALJ determined Lewis was not disabled. (AR 10-24.) On May 11, 2021, the Appeals Council denied review thus making the ALJ's decision final for judicial review. (AR 1-5.) *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

**The ALJ's Decision**

At step one, the ALJ determined that Lewis had not engaged in substantial gainful activity since September 17, 2018, the application date. (AR 15.) At step two, the ALJ determined that Lewis suffered from the severe impairments of depression, post-traumatic stress disorder ("PTSD"), schizophrenia, anxiety, and chronic obstructive pulmonary disease ("COPD"). *Id*. At step three, the ALJ determined Lewis did not suffer from an impairment or combination of impairments that met or equaled a listed impairment. (AR 16.) After step three but before step four, the ALJ determined Lewis's residual functional capacity ("RFC") as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non[-]exertional limitations: the claimant could perform simple job instructions only and only have occasional interactions with public, co-workers, and supervisors. The claimant can have occasional exposure to dust, fumes, and smoke.

(AR 17.) At step four, the ALJ determined that Lewis had no past relevant work. (AR 23.) At step five, the ALJ found Lewis able to perform other work such as laundry worker, warehouse worker, and retail marker. (AR 23-24.)

**Brief Factual History**

Lewis was 53 years old and an individual of advanced age when she filed her application.[1] (AR 23.) She holds a GED. (AR 318.) She lives in an apartment with her emotional support animal and does her own chores. (AR 85.) She crochets as a hobby but not every day because sometimes she is too overwhelmed. (AR 85, 94-95.) The TV is usually on all day for noise and she does not use a computer. (AR 85-86.) She does not exercise. (AR 86.) Sometimes she stays in bed for three days and on those days, she will

---

[1] Lewis changed age categories by the time the ALJ issued her decision in 2021 and, at 55 year old, she is a person of advanced age in the eyes of the Administration. When Lewis turned 55 years old, her threshold under the Vocational Rules (20 C.F.R. pt. 404, Appendix 2) changed to light.

not get up and shower. (AR 95.)

Drugs and alcohol have been a big problem for her in the past. (AR 86.) She testified that she had a DUI in 2018[2] and since then she has rarely drunk alcohol because of the testing she had to do as a result of her DUI. *Id*. She also had a problem with cocaine and around 2018 was the last time she "dipped into it." (AR 87.) Throughout 2018 she had some substance abuse relapse prevention along with substance abuse education. *Id*.

She does not have a driver license. (AR 88.) She gets to her appointments by taking transportation offered through her insurance and the bus. *Id*. She has trouble sleeping and sleeps about 6 hours a night. *Id*. She treats her mental health at La Frontera every three months. (AR 88-89.) Her current medications are buspirone, hydrochlora, chlorpromazine, divalproex, amlodipine, azelstine, and she uses a nicotine patch. (AR 89.) She finally quit smoking. (AR 106.) The only side effects from her medications are eating too much and drowsiness. (AR 89.) Her mental health problems make it difficult for her to concentrate. (AR 91.) She also has difficulty comprehending what she reads. *Id*. She also suffers from panic attacks. (AR 92.)

She sees her primary care doctor at least once every couple of months. (AR 88-89.) She can only walk for 45 seconds to a minute at a time because she gets short of breath. (AR 90.) She can stand for longer if she's not moving. *Id*. She uses an inhaler. *Id*. She has trouble sitting but not as much trouble as she has walking. *Id*. She can lift about 5 pounds. *Id*. She testified that she experiences shortness of breath, "[w]hen I walk, when I sleep, all the time." (AR 91.) She hopes to get a C-PAP machine to help her breathe. *Id*. She experiences muscle spasms in her back a few times a week that last for about two to three minutes. *Id*. She testified that her "heart stops beating" when she sleeps so she sleeps sitting up. (AR 93.) She's been advised that she needs to undergo another sleep study. *Id*. She understands that "there's bleeding involved in [her] breathing" and the doctors have told her that she is probably never going to reach a state where she is not "seeking breath" all of the time. (AR 94.)

---

[2] There is also evidence to suggest that Plaintiff's DUI was in 2016. (AR 618.)

She uses food stamps and goes to Sister Joe's, a woman's shelter, to obtain hygiene items. (AR 91-92.) If she were required to stand for an hour and then take a short break, she testified that she could not get up and stand for another hour. (AR 95.) She testified that she could try working for four hours as long as she did not have anything in her arms. (AR 95-96.) She testified that her breathing and anxiety scare her the most. (AR 97.)

## STANDARDS OF REVIEW

A claimant is "disabled" for the purpose of receiving benefits if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner employs a five-step sequential process to evaluate SSI claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. § 404.1520(a)(4). At step five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

Lewis filed her claim after March 27, 2017 and the new regulations apply to her case. *See* 20 C.F.R. pts. 404 & 416. "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). "The agency must 'articulate . . . how persuasive' it finds 'all of the medical

opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(3)." *Woods,* 32 F.4th at 792. Supportability refers to the amount of relevant objective medical evidence and supporting explanations provided by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The "more consistent a medical opinion(s) or prior administrative medical finding(s) is with" the record, "the more persuasive" the opinion or finding will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

## ISSUES ON REVIEW

Lewis raises two issues for review. (Doc. 26 at 2.) First, she claims that the ALJ failed to provide clear and convincing reasons supported by substantial evidence in discounting her symptom testimony. *Id*. at 7-12. Second, she claims that the ALJ improperly analyzed the opinions of consultative examining psychologist Noelle Rohen, Ph. D. and consultative examining internist Jeri Hassman, M.D. *Id*. at 12-18. As more fully explained below, the Court agrees with Lewis's second claim of error.

## ANALYSIS

### Consideration of Medical Opinion Evidence

Under 20 C.F.R. § 404.1520c, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Section 404.1520c further provides that when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at § 404.1520c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2). The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id.* at § 404.1520c(b). The ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

<u>Dr. Rohen</u>

Plaintiff argues that the ALJ erred in adopting a portion of Dr. Rohen's opinions regarding her mental functioning while ignoring "important nuanced caveats" to other portions of Dr. Rohen's opinion. (Doc. 26 at 16.) Plaintiff points out that while Dr. Rohen opined that she was moderately impaired in her ability to interact with others, Dr. Rohen qualified her opinion explaining, *inter alia*, that "from a paranoid perspective, [her] impairment is said to be much more significant." (AR 613.) Dr. Rohen opined that Plaintiff's "serious affect and absence of levity," along with "the presence of her dog who appears to very well know the routine when accompanying claimant, [i]s some evidence that [Plaintiff's] assertion that she is not comfortable when she is out of her home." *Id.* Plaintiff urges that the ALJ erred in failing to mention Dr. Rohen's opinion on persistence and the vocational impact of her emotional support animal. (Doc. 26 at 17.) The Commissioner does not directly address Plaintiff's arguments and instead globally argues that the ALJ properly evaluated Dr. Rohen's opinions. (Doc. 31 at 16-18.)

In her Psychological Report dated December 18, 2019, Dr. Rohen records Plaintiff as suffering from paranoia and PTSD. (AR 616.) Dr. Rohen records Plaintiff's self-reported history of being abducted for four days in the late 1980s, having been assaulted on her way to work on the early 1990s, and that her paranoia and PTSD "symptoms intensified in 2016 with the death of her parents." *Id*. Plaintiff is recorded as stating, "I don't trust (*people*), that I won't get hurt." *Id*. (Emphasis in original.) Dr. Rohen's report further notes:

> She avoids as much as possible. When she goes out, she mentally prepares, and takes her support dog. She only goes out when she must. When at home, with no plans to be out, anxiety is better but still present. The daily noises outside her residence strike fear. She has not slept in her bedroom since moving in, even though the neighborhood is supposedly safe. She sleeps on the couch by the door. On the bus, she sits by the driver for safety. She startles easily with any sound or movement by people, even when she knows they are there. She reports re-experiencing of her past every day, and in reaction, feels deep sadness. She endorses nightmares but does not remember content, says she knows she had a bad dream because she awakens crying.
>
> Mood is generally "calm," but she will have periods of depression "every day, all the time." There are temper bursts easily provoked, though she denies engagement unless somebody really provokes her. Historically she has been court-ordered many times to anger management classes, she asserts. She sleeps 3-4 hours a night with medication, then naps on and off all day. Without medication, she will be awake for days, not tired. Daytime energy level is poor. Motivation for hygiene is often poor and neglected if she is not going out. "I'm in the house. Why." Self-esteem is low – she has gained weight, does not feel good about the situation. Concentration is inadequate to finish a tv show. Appetite is high on meds, weight is up 30 lbs or so.

(AR 616-617.)

Dr. Rohen also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (AR 612-615.) Dr. Rohen checked a box indicating that Lewis has mild limitations in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (AR 612.) Dr. Rohen checked a box indicating that Lewis has moderate limitations in her ability to interact appropriately with the public, supervisors, co-workers and respond to appropriately to work situations and to changes in a routine work setting. (AR 613.) Dr.

Rohen explained and qualified her check-the-box opinions with a narrative stating:

> By claimant's self-report impairment in [her ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in the routine work setting] is marked, but writer has limited objective evidence. From a social skills perspective, I believe impairment is minimal. However, from a paranoid avoidance perspective, impairment is said to be much more significant. Writer cannot objectively verify, but will point to her serious affect and absence of levity, as well as the presence of her dog who appears to very well know the routine when accompanying claimant, as some evidence of her assertion that she is not comfortable when out of her home.
> . . .
> I think persistence outside of the home is the greatest impairment, in that the combination of trauma-related avoidance and psychosis-related paranoia reportedly keep her from leaving her home when not utterly necessary. If she is truly dependent upon an emotional support animal to travel outside of her home, that is an additional complication when considering appropriateness for the workplace.

(AR 613.) In assigning persuasiveness, support and consistency to Dr. Rohen's opinion the ALJ determined:

> The claimant had mild limitations concerning her ability to understand, remember and carryout instructions; She had moderate limitations concerning her ability to interact appropriately with supervision, co-workers, and the public due to the claimant's usage of an emotional support animal when in public (Exhibit B7F/1-4). These opinions were supported with objective clinical findings and subjective symptoms reported to the examiner. The claimant's care and treatment supports the opinion and the undersigned assigned social limitations due to the claimant's moderate limitation with interacting with others.

(AR 22.)

Under the new regulations, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, [20 C.F.R.] § 404.1520c(b)(3)." *See Woods*, 32 F.4th at 792. As pointed out by Lewis, the ALJ failed to explain her rejection of Dr. Rohen's opinion that "persistence outside the home is [Lewis's] greatest impairment . . . If she is truly dependent upon an emotional support animal to travel outside of her home, that is an additional

complication when considering the appropriateness for the workplace." (AR 22.)

The Court agrees with Plaintiff that the ALJ ignored Dr. Rohen's qualification of her persistence opinion and did not address it. (AR 19-20, 22.) The Commissioner does not directly address Plaintiff's argument. The ALJ offered no reason for failing to mention Dr. Rohen's qualification of her persistence opinion and, thus, the Court finds that the ALJ's persuasiveness, support and consistency determination Dr. Rohen's persistence opinion is not based on substantial evidence.

Dr. Hassman

Plaintiff argues the ALJ erred in rejecting Dr. Hassman's opinion regarding her exertional limitations as a result of her COPD and her consequential need for multiple inhalers. (Doc. 26 at 17.) She urges that the ALJ improperly exclusively focused on musculoskeletal conditions in analyzing Dr. Hassman's opinion. *Id*. at 18. The Commissioner argues the ALJ properly found Dr. Hassman's opinion not persuasive as unsupported and inconsistent. (Doc. 31 at 15.) The Commissioner claims that "the ALJ reasonably explained that the light limitations were not supported by the notes from Dr. Hassman's own examination" and "Dr. Hassman's opinion . . . was internally inconsistent with the neurological examinations of the lower extremities . . .[.]" *Id*.

On June 29, 2020, Dr. Hassman conducted an examination and prepared a Medical Source Statement of Ability to do Work-Related Activities (Physical). (AR 735-744.) Dr. Hassman noted Plaintiff's long history of smoking and a then-recent diagnosis of COPD. (AR 7735.) Dr. Hassman recorded Plaintiff's complaints of frequent chest pain and shortness of breath and noted her cardiac catheterization of six months ago. *Id*. Dr. Hassman recorded Plaintiff's medications which included an albuterol inhaler, Spiriva, and Flovent. (AR 736.)

On physical examination Dr. Hassman noted, in relevant part, that Plaintiff "had no respiratory distress or shortness of breath. Lungs were clear bilaterally." *Id*. Dr. Hassman found, in relevant part, a diagnosis of "COPD on multiple inhalers. She had no shortness of breath or respiratory distress on physical exam." (AR 737.) Dr. Hassman further found

that Plaintiff had clear lungs, normal manual dexterity, straight and nontender thoracic and lumbar spine, full range of motion of the lumbar spine, no evidence of muscle spasm or hypertonicity of the paraspinal muscles, negative straight leg raising bilaterally in both sitting and supine positions, no swelling, warmth, or tenderness of the hips, knees, or ankles, no crepitus or instability of the knees or ankles, and no atrophy, tenderness, or edema of the lower legs. (AR 736-737.) Dr. Hassman limited Plaintiff to light work limitations. (AR 738-739; Doc. 22 at 17; Doc. 31 at 15.)

In considering the opinion of Dr. Hassman the ALJ determined:

> The undersigned considered the opinion of Dr. Hassman as detailed above (Exhibit B13F). This opinion is not persuasive as the light limitations were not supported by notes from the examination of the record. The consultative examiner found the claimant had normal manual dexterity. An examination of the thoracic and lumbar spine was straight and nontender. She has no evidence for muscle spasm or hypertonicity of the paraspinal muscles. She had full range of motion of the lumbar spine without pain. Straight leg raising test was negative bilaterally in both sitting and supine positions. She had full range of motion of both lower extremities without pain. She had no swelling, warmth, or tenderness of the hips, knees, or ankles. She had no crepitus or instability of the knees or ankles. She had no atrophy, tenderness, or edema of both lower legs. Neurological examination of both lower extremities revealed normal motor strength, sensation, and reflexes (Exhibit B13F).

(AR 22.)

Dr. Hassman did not ask Plaintiff to exert herself during his examination and the ALJ's reliance on Dr. Hassman's relatively normal findings upon his examination of Plaintiff's musculoskeletal systems to reject his opined light exertional limitations is erroneous. *See Dilbeck v. Comm'r Soc. Sec. Admin.*, No. CV-19-5289-PHX-DMF, 2020 WL 4364213 at *3 (D. Ariz. July 30, 2010) (finding ALJ's reliance on records that were "an applies to oranges comparison" as support for rejecting physician's opinion was erroneous).

Furthermore, a November 6, 2019 medical record reflects that Plaintiff could not complete a treadmill stress test "due to the fact that she was becoming short of breath." (AR 863.) Plaintiff is recorded as having "resting O2 stats at 94% and 72% during

exercise." (AR 865.) The record further notes:

> The Duke treadmill score is -3, indicating moderate risk for ischemia.
> **At rest, the mid-to-apical anterior and anterolateral walls are hypokinesis (hinge point). This is consistent with coronary artery disease.**

(AR 866.) (emphasis in original.) The Commissioner fails to address this objective medical finding. Instead, the Commissioner argues the ALJ appropriately relied on Dr. Hassman's statement that Plaintiff was in "no respiratory distress" during his examination in determining that Dr. Hassman's opinion is not persuasive. (Doc. 31 at 15, citing AR 736.)

As mentioned above, under the new regulations, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, [20 C.F.R.] § 404.1520c(b)(3)." *See Woods*, 32 F.4th at 792. Supportability examines the relevant objective medical evidence and supporting explanations presented by the source. *See* 20 C.F.R. § 404.1520c(c)(1). Consistency examines the evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 404.1520c(c)(2). Plaintiff's failed stress test is a significant piece of medical evidence documenting an exertional limitation and the ALJ erred in failing to consider it in determining the persuasiveness, support and consistency of Dr. Hassman's opinion.[3]

**The Errors are Not Harmless**

By failing to discuss Dr. Rohen's opined persistence limitations and the vocational impact of Plaintiff's emotional support dog the ALJ failed to support her persuasiveness,

---

[3] The RFC fails to appropriately account for Plaintiff's COPD and breathing difficulties. The ALJ claims to have accounted for Plaintiff's "respiratory limitations" by limiting Plaintiff to "occasional exposure to dust, fumes, and smoke." (AR 17, 22.) Significantly, however, the RFC fails to contain an exertional limitation and instead provides that Plaintiff can perform a full range of work at all exertional levels. *Id*. In light of the objective medical evidence documenting Plaintiff's failed stress test—an activity requiring exertion—the RFC's non-exertional limitation restricting Plaintiff's exposure to dust, fumes, and smoke, is insufficient to account for Plaintiff's documented exertional limitation.

support and consistency determination regarding Dr. Rohen's opinion with substantial evidence. Similarly, by relying on Dr. Hassman's finding that Plaintiff was in no respiratory distress during his non-exertional examination, the ALJ failed to support her persuasiveness, support and consistency determination regarding Dr. Hassman's opinion with substantial evidence. These errors are harmful because this Court cannot confidently conclude that no reasonable ALJ, when fully crediting Dr. Rohen's and Dr. Hassman's opinions, could have reached a different disability determination. *See, e.g., Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding that a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination).

### Remand is Appropriate

Lewis seeks remand for remand for further proceedings. (Doc. 26 at 18.) Upon finding the ALJ committed reversible error, the Court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). The Court finds that remand to the Commissioner is appropriate.

### CONCLUSION

For the foregoing reasons, the decision of the ALJ will be reversed and the matter remanded to the Commissioner for further proceedings. Accordingly,

**IT IS HEREBY ORDERED WITHDRAWING** the referral to the Magistrate Judge (Doc. 20).

///

///

///

///

**IT IS FURTHER ORDERED REVERSING** the decision of the Administrative Law Judge and **REMANDING** this matter for further proceedings. The Clerk of the Court is directed to enter judgment accordingly and close this case. Dated this 2nd day of September, 2022.

_____
Honorable Raner C. Collins
Senior United States District Judge